IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CHRIS MCHENRY,

        Plaintiff,

v.

CITY OF OTTAWA, KANSAS, et al.,

        Defendants.

Case No. 16-2736-DDC-JPO

**MEMORANDUM AND ORDER**

        This matter comes before the court on plaintiff Chris McHenry's Motion for Entry of Final Judgment under Fed. R. Civ. P. 54(b), Doc. 64. The defendants have filed responses, opposing the motion.[1] For the reasons explained below, the court grants plaintiff's motion.

**I.      Background**

        Plaintiff Chris McHenry filed this lawsuit on behalf of Joseph Jennings as the administrator of his estate and heir to recover for Mr. Jennings's death. Briefly summarized, this lawsuit arises from the shooting death of Mr. Jennings by Franklin County sheriff deputies and Ottawa police officers on August 23, 2014. Defendants Abe Schmidt, Casey Gilmore, Justin Bulcock, Jesse Vega, and Ricky Wilson ("the shooting officers") allegedly shot Mr. Jennings. Defendants Doug Waterman, Bryce Hart, Derek Butters, Hunter Dryden, and Dwayne Woods ("the non-shooting officers") allegedly were present but they did not fire their service weapons. Plaintiff also sued the City of Ottawa ("Ottawa") and Franklin County, Kansas by and through its Board of County Commissioners ("Franklin County").

---

[1]     The court ordered that plaintiff should not file a reply. Doc. 67.

Only four claims matter to this motion.  Count I of the Complaint alleges that the shooting officers incurred liability under 42 U.S.C. § 1983 for violating Mr. Jennings's constitutional right to be free from excessive force.  Count II alleges that the non-shooting officers incurred liability under § 1983 for failing to intervene in the use of constitutionally excessive force.  Count IV alleges that Franklin County and Ottawa denied Mr. Jennings the benefits of their law enforcement services, violating the Americans with Disabilities Act ("ADA") and the Rehabilitation Act.  Count VI alleges that all defendants wrongfully caused Mr. Jennings's death by negligence.

One set of defendants filed a Motion to Dismiss.  Doc. 29.  Another filed a Motion for Judgment on the Pleadings.  Doc. 31.  The court ruled both motions in a consolidated Memorandum and Order ("Order") dated September 26, 2017.  *See* Doc. 46.  It held that the claim in Count II—asserting that the non-shooting officers were liable under § 1983 for failing to intervene to prevent use of constitutionally excessive force—did not plead sufficient facts to state a claim.  This Order also held that Count VI failed to plead a plausible claim against the non-shooting officers.  Combined, these two rulings terminated all claims against the non-shooting officer defendants.

Defendants did not fare so well on other aspects of the motions.  The Order declined to dismiss Counts I and IV, leaving viable those claims against the shooting officer defendants, Ottawa, and Franklin County.  Those defendants now have appealed the court's decision on Count I as a matter of right because it declined to grant them qualified immunity.  *See* Docs. 49, 55.  These defendants also asked the court to certify its decision on Count IV for interlocutory appeal, Docs. 47, 53, and the court granted their request.  Doc. 70.  This leaves the current motion, Doc. 64.  In it, plaintiff asks the court to enter final judgment in favor of the non-

shooting officers under Fed. R. Civ. P. 54(b). He reasons that there is no just reason to delay review of the court's decision because it effectively concludes this matter as it pertains to the non-shooting officer defendants.

## II. Legal Standard

"When an action presents more than one claim for relief . . . the court may direct entry of final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b). "The purpose of Rule 54(b) 'is to avoid the possible injustice of a delay in entering judgment on a distinctly separate claim or as to fewer than all of the parties until the final adjudication of the entire case by making an immediate appeal available.'" *Okla. Turnpike Auth. v. Bruner*, 259 F.3d 1236, 1241 (10th Cir. 2001) (quoting 10 Charles A. Wright et al., *Federal Practice and Procedure: Civil* § 2654 (2d ed. 1982)). But the rule "'preserves the historic federal policy against piecemeal appeals . . . .'" *Id.* (quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 438 (1956)).

To certify a final judgment under this rule, the court must make two express determinations: (1) "that the order [the court] is certifying is a final order" and (2) "that there is no just reason to delay review of the final order until [the court] has conclusively ruled on all claims presented by the parties to the case." *Id.* at 1242 (citing Fed. R. Civ. P. 54(b); *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7–8 (1980)).

## III. Discussion

### A. Final Order

An order is "final" under Fed. R. Civ. P. 54(b) when it is "'an ultimate disposition of an individual claim entered in the course of a multiple claims action.'" *Id.* (quoting *Curtiss-Wright Corp.*, 446 U.S. at 7). In cases with multiple parties, a court enters a final judgment when it

3

disposes of *all* claims against at least one—but not all—of the parties. *See Caldwell-Baker Co. v. S. Ill. Railcar Co.*, 209 F.R.D. 649, 650 (D. Kan. 2002) (concluding that the court had issued a final judgment on claims against some of the defendants by dismissing all of plaintiff's claims against those defendants under Rule 12(b)(6) even if one defendant remained whose allegedly wrongful conduct was related factually and legally to the claims already decided in favor of the dismissed defendants); *see also Jewler v. District of Columbia*, 198 F. Supp. 3d 1, 3 (D.D.C. 2016) (concluding that the court had issued a final judgment on claims against some of the defendants in a § 1983 case when the court dismissed all claims against those defendants, "leaving no further basis for them to participate in the litigation").

After the September 26 Memorandum and Order, there is "no further basis for [the non-shooting officers] to participate in the litigation." *Jewler*, 198 F. Supp. 3d at 3. The court's rulings on the claims in Counts II and IV terminated all claims asserted against the non-shooting officers. There is nothing for them to do except wait for the rest of the case to conclude and then face any appeal (or cross-appeal) plaintiff elects to take of the rulings in Counts II and IV. The court thus views its Order as a final order for the five non-shooting officer defendants.

While defendants come to the opposite conclusion, their reasoning is not persuasive. They liken this case's posture to two cases—*Oklahoma Turnpike Authority v. Bruner*, 259 F.3d 1236, and *National Credit Union Administration Board v. Morgan Stanley & Co., Inc.*, No. 13-2418-JWL, 2015 WL 4463645 (D. Kan. July 21, 2015). In one of these cases, the Tenth Circuit ruled that a district court had not entered a final order. *See Bruner*, 259 F.3d at 1243. In the other, our court held that a partially dispositive order was not a final order. *Morgan Stanley*, 2015 WL 4463645, at *3. Defendants argue that the court should reach the same conclusion

4

here.  Careful examination reveals, however, material differences between this case and the two relied on by defendants.

In the Tenth Circuit ruling, *Bruner*, the case's substantive and procedural posture consumes much of the Circuit's eight-page opinion.  *See Bruner*, 259 F.3d at 1239–41.  It is too intricate to repeat here.  But the Circuit captured the gravamen of its holding reversing the district court's Rule 54(b) certification in two operative sentences:

> Thus, a judgment is not final for the purposes of Rule 54(b) unless the claims resolved are distinct and separable from the claims left unresolved.
>
> * * *
>
> [B]ecause the district court has only partially disposed of a class of claims that, as the district court now understands them, are so factually related that they should instead be disposed of together, we lack jurisdiction to hear this appeal.

259 F.3d at 1243.  This reasoning will not fit the current case because the court's Order has decided all claims asserted against the non-shooting officers.

*Morgan Stanley* is similar.  There, Judge Lungstrum dismissed 20 of plaintiff's 21 securities claims on a Rule 12(b)(6) Motion to Dismiss.  *Morgan Stanley*, 2015 WL 4463645, at *1.  Plaintiff asked him to certify his decision so they could take an immediate appeal.  *Id.*  He declined.  *Id.* at *3.  That ruling emphasized that all 21 of plaintiff's claims—both the 20 dismissed claims and the one viable claim—relied on predominantly identical misrepresentations and omissions, all allegedly made by the same issuing company, and all relied on the same legal theory.  *Id.*  Unsurprisingly, Judge Lungstrum declined to certify his ruling on the 20 claims for an early piecemeal appeal.  *Id.*  The differences between those procedural facts and the ones in this case are self-evident.  Defendants' reliance on *Morgan Stanley* is hardly persuasive.

Here, plaintiff pursues a different legal theory against the non-shooting officers compared to the other defendants in this lawsuit.  Namely, plaintiff alleges that the non-shooting officers

5

failed to intervene when the shooting officers shot Mr. Jennings. While this theory pertains in some measure to plaintiff's claims against the shooting officer defendants, Franklin County, and Ottawa, it is not identical to the other claims against these defendants nor does it involve similar actions by the non-shooting officers. The court thus concludes it has issued a final order dismissing all the claims asserted against the non-shooting officer defendants.

**B.      No Just Reason to Delay Review**

Having concluded the court's order is a final order, the court must determine whether there is any just reason to delay appeal. Relevant factors for the court to consider in making this determination include "'whether the claims under review are separable from the others remaining to be adjudicated and whether the nature of the claims already determined is such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals.'" *New Mexico v. Trujillo*, 813 F.3d 1308, 1316 (10th Cir. 2016) (quoting *Curtiss-Wright Corp.*, 446 U.S. at 8)).

Here, there is no just reason to delay an appeal on the claims against the non-shooting officers. While plaintiff's claims against the non-shooting officers and the shooting officers come from a common collection of operative facts, the shooting officers already have appealed the court's decision finding that the Complaint sufficiently alleged that the shooting officers violated Mr. Jennings's constitutional rights. Docs. 49, 55. This relieves a considerable equity against certifying judgment—namely the interconnectivity of plaintiff's excessive force and failure to intervene claims. *See Jones v. Norton*, 809 F.3d 564, 576 (10th Cir. 2015) ("'[I]n order for there to be a failure to intervene, it logically follows that there must exist an underlying constitutional violation.'" (quoting *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005))).

Likewise, there is no threat that the appellate court would have to decide the same issues more than once. If the other defendants had not appealed the court's ruling on Count I, the court would have reservations about entering a final judgment. That situation would force the Tenth Circuit to decide whether plaintiff's Complaint sufficiently alleges that the shooting officers violated Mr. Jennings's constitutional rights—which is exactly what Count I alleges. *See id.* But the Tenth Circuit already has the court's ruling on Count I before it. Docs. 49, 55. Thus, the Tenth Circuit already must decide a subsidiary issue embedded in Count II's claim against the non-shooting officers—whether the shooting officers violated Mr. Jennings's constitutional rights.

Indeed, the court's delay in entering judgment would prejudice plaintiff significantly. Defendants delayed this case's progress by taking interlocutory appeals seeking review of the court's Order. That was their right. It will take some time for the Circuit to decide those issues. If the Circuit affirms the court's order, defendants may move for summary judgment after the close of discovery. If defendants were to lose such a motion, defendants properly could appeal again. *See Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985) (holding that a defendant asserting qualified immunity may appeal immediately a decision denying summary judgment on a qualified immunity defense). Again, this appeal will take time. Because it could take years to resolve all the issues in this case, and given that plaintiff's claims against the non-shooting officers are distinct from any claim still pending before this court, the court finds that there is no just reason to delay appeal.

### IV.  Conclusion

For the reasons stated above, the court grants plaintiff's Motion for Entry of Final Judgment in favor of defendants Waterman, Hart, Butters, Dryden, and Woods ("the non-

7

shooting officers"). The court finds that the Order (Doc. 46) was a final order dismissing all claims asserted against those five defendants identified as the non-shooting officers and there is no just reason to delay an appeal of that decision.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's Motion for Entry of Final Judgment (Doc. 64) is granted.

**IT IS FURTHER ORDERED THAT** judgment be entered in favor of defendants Doug Waterman, Bryce Hart, Hunter Dryden, Dwayne Woods, and Derek Butters on all claims asserted against them.

**IT IS SO ORDERED.**

**Dated this 15th day of December 2017, at Topeka, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**

8